LINDSEY *v.* STATE.

Opinion delivered October 16, 1916.

HOMICIDE—SECOND DEGREE MURDER.—Defendant and deceased, after a disagreement expressed the intention, each of killing the other; defendant went home, procured a gun, and returning, killed deceased. *Held,* under the evidence that a conviction of second degree murder was proper.

Appeal from Jefferson Circuit Court; *Daniel Taylor,* Special Judge; affirmed.

STATEMENT BY THE COURT.

The appellant, L. E. Lindsey, was convicted of the crime of murder in the second degree in killing one Josh Benedict, and he appeals.

On the morning of the 26th day of July, 1914, the appellant and several others, including Josh Benedict, met at a commissary at Marion's mill, in Jefferson County, Arkansas. They drank several quarts of cider, and some of the crowd got very drunk. Josh Benedict and the appellant had a quarrel and a fight, and appellant also

got into a fight with John Wilson. Appellant stated that he was going home and get his gun and kill both of the d—n s—s of b—s. He made threats that he would kill both of them before the sun went down, stating in the presence of one witness that he could kill them and come clear for a thousand dollars. Appellant went home, got his gun and came back to the commissary.

During the quarrel and fight between Benedict, Wilson and appellant, appellant told Benedict and Wilson that it was a damn cowardly trick to beat him up—both of them being young and stout—and for them to take his knife. Thereupon, appellant said that he would go home and get his gun and come back and make both of them run like a spotted ape. Appellant was asked at this point by Benedict if he was armed, and appellant told him no. When this information was obtained, Benedict told appellant to go home and get his gun; that what had been said to him was an insult that he (Benedict) never would take; and if appellant was not back within an hour he would be at appellant's gate. When appellant returned with his gun, he rode back somewhere near the commissary, and hitched his mule and expressed himself to the effect that if he was going to have trouble, he didn't want to be on a mule. Later Benedict got on appellant's mule, rode the same to the home of Leo Burgess, got his gun, and was returning to the commissary; and on his way he was advised by a witness not to go where he said he was going. To this Benedict replied that "that kind of advice was as good as his mother could give him, but he just could not accept it; that he was going down there and kill the s— of a b— or get killed."

Appellant, after his return with his gun, had stopped on the road to assist one Ashcraft, who was very drunk and very sick. As Benedict approached the place where appellant and Ashcraft were situated, appellant was seen in a position to shoot and Benedict was getting down off of the mule. Appellant was telling Benedict to turn the mule loose, that he didn't

want to kill the mule. Benedict was trying to keep the mule between himself and appellant, and appellant was trying to get a shot at him. As soon as the mule passed out of the way, appellant shot.

The witness who observed this testified that after the first shot, Benedict fell. There had been one shot fired before that that the witness didn't see. There had been two shots fired when the witness got to where they were, and the witness stated that Benedict was wounded in his breast and through his right wrist at that time. When witness walked up, he saw that appellant was getting ready to shoot again, and asked him not to shoot any more, telling appellant that Benedict was dead anyway; whereupon appellant said: "I have done started into this thing, and I will make a clean finish of the job." And he shot him again in the back of the head; then he walked around Benedict's side and fired two more shots right in his side. Witness saw appellant fire four shots. This witness stated that Benedict did not have a gun in his hand as he was getting off of the mule. After appellant had finished shooting, he said: "There lies the s— of a b—, and there lies his gun. He fired the first shot and I killed him. I had to do it."

It was shown that the wound in Benedict's hand blew off the fleshy part of the hand at the wrist, unjointing it and leaving the thumb and fingers. The above is substantially the testimony adduced on behalf of the State.

On behalf of the appellant, the testimony tended to show that he had a quarrel and fight with Benedict and Wilson. Benedict called appellant a liar and appellant started toward him to strike him with his fist, when he saw that Benedict was going after a piece of timber, the appellant pulled his knife. Wilson knocked appellant down with a pole. Benedict had hold of appellant's left hand. Appellant told them he was going home and get his gun, and he did so and came back. He hitched his mule a short distance from the commis-

sary, and after talking with one Mr. Pennington a few minutes, he made up his mind to drop it and go home.

He was asked to assist Ashcraft and went out to where he was, putting his gun down by the side of a sapling. After he had been assisting Ashcraft for a minute or so, he heard a gun fire, raised his eyes and saw Benedict on his (appellant's) mule between ten and twelve feet away. Benedict at that time was taking his gun down from his shoulder to reload it. Appellant then ran to his gun and Benedict kept the mule turned between himself and appellant. Appellant asked him to turn the mule loose and let it get out of the way. Benedict made no reply. The mule ran backward a couple of steps, exposing Benedict, whereupon appellant fired, and appellant then continued to shoot him as fast as he could work his gun. Appellant confessed that when a witness asked him to desist, he stated: "I have commenced it. I am going to make a good job of it."

Among other instructions, the court gave to the jury instruction No. 17, at the request of the State, which is as follows:

"17. If you believe from the evidence, beyond a reasonable doubt, that prior to the killing of the deceased, the defendant, L. E. Lindsey, and deceased had had a difficulty, and after such difficulty went off and armed themselves with deadly weapons and returned to renew the contest, and did renew the contest, in which the deceased was killed by the defendant, then you should convict the defendant of murder in the second degree, or manslaughter.

"Murder in the second degree if sufficient time had elapsed for passion to cool and reason to be restored.

"Manslaughter, if the difficulty was renewed and the deceased was killed, not in a spirit of revenge, but in the heat of passion caused by a provocation apparently sufficient to render the passion irresistible, and before a sufficient time had elapsed for reason to be restored."

The appellant asked the court to instruct the jury as follows:

"21. If you believe from the evidence that the first shot fired by this defendant killed Benedict, and that it was fired by the defendant in apparently necessary self-defense, then the defendant should be acquitted; and the further fact, if proven, that he afterward fired several shots into Benedict's dead body, should not be considered by you."

The court modified this prayer by adding to it the following:

"But if you believe from the evidence, beyond a reasonable doubt, that the first shot fired by the defendant did not produce death, and would not of itself have produced death, but rendered deceased incapable of doing defendant any serious bodily harm, and that defendant observed and knew the nature of the wound first inflicted—that it was not sufficient to produce death, and that deceased was no longer capable of doing him any serious bodily harm, and with this knowledge again fired into the body of deceased, killing him, then you should convict the defendant of some degree of crime charged in the indictment, as explained to you in these instructions."

The appellant objected to the refusal of the court to grant his prayer as asked and in giving the same as modified.

*E. J. Kerwin* and *Caldwell & Triplett*, for appellant.

1. The court erred in giving instructions Nos. 17 and 21 as modified. 37 Ark. 238. The rule is that an instruction, though it is a correct statement of the law in the abstract, which is not applicable to the evidence, should not be given. 84 Ark. 128; 99 *Id.* 648; 82 *Id.* 324; 34 *Id.* 469; 36 *Id.* 242; 54 *Id.* 336; 13 *Id.* 317.

2. The court erred in giving the second clause of instruction No. 21. Deceased fired the first shot and appellant fired in self-defense.

*Wallace Davis*, Attorney General, and *Hamilton Moses*, Assistant, for appellee.

There is no error in the court's charge. This was simply a renewal of a fight when sufficient time had lapsed for cooling and makes a case of murder. The jury let the defendant off light. The verdict is neither contrary to the law nor the evidence. 50 Ala. 166; 24 Cal. 17; 65 Cal. 129; 2 Clark (Pa.) 467; 85 Ark. 536; 41 S. W. 816; 62 Ark. 306; 95 *Id.* 432.

WOOD, J. (after stating the facts). 1. The court gave correct instructions covering the degrees of homicide included in the indictment and applicable to the evidence adduced. There was testimony to warrant the court in giving instruction No. 17. It correctly declared the law applicable to the testimony adduced on behalf of the State and tending to show that appellant was guilty of the crime of murder or manslaughter, and also the testimony on behalf of the appellant tending to show that the killing was done in self-defense.

2. The modification to appellant's prayer for instruction No. 21 was also correct. There was substantial evidence from which the jury might have found that appellant wilfully killed Benedict after he discovered that Benedict had been disabled, having his wrist broken and having dropped his gun—that appellant wilfully and maliciously fired into the body of Benedict three times after he discovered Benedict's disabled and helpless condition.

The testimony warranted the verdict, and the law was correctly declared. The judgment is therefore correct, and it must be affirmed.